## GULF & S. I. R. CO. v. BEARD.

[93 South. 357.   No. 22664.]

1. CARRIERS. *Measure of damages for negligence of agent in advising passenger to take wrong route held to be the actual additional cash fare paid.*

   In a suit for damages against a railroad company for the negligence of a ticket agent in informing plaintiff that his ticket entitled him to transportation over a certain route, which was the wrong route, thereby causing plaintiff to expend for cash fare the sum of two dollars and eight cents, and also somewhat annoying and worrying him because of misdirection, the actual damages recoverable by plaintiff is the amount paid out for cash fare, namely two dollars and eight cents.

2. DAMAGES. *Mental anguish or worry disconnected from physical suffering not elements of actual damages.*

   Mere annoyance, mental anguish or worry, disconnected from physical suffering, do not constitute elements of actual damages.

APPEAL from circuit of Smith county.

HON. W. H. HUGHES, Judge.

Suit by Charlie Beard against the Gulf & Ship Island Railroad Company. Judgment for plaintiff, and defendant appeals. Reversed and judgment rendered.

*T. J. Wills,* for appellant.

The court was requested to charge the jury to find for the defendant. This instruction was refused. The court charged the jury that if the conductor wrongfully, wilfully or carelessly took up plaintiff's ticket, which ticket was a coupon or interline ticket, entitling plaintiff to transportation over the Southern Railroad, and held it until the plaintiff paid his transportation from Taylorsville to Laurel, and by taking up and holding the ticket, caused plaintiff to suffer damages or mental or physical worry or pain and embarrassment, that it was the duty of the jury to find for the plaintiff. The court further charged the jury for the plaintiff that if they believed that the agent made representations to the plaintiff as to the train he should board or the route he should take, and that plaintiff thereby was caused to board a different train or to take a different route and was caused to suffer undue physical or mental pain and embarrassment, actual damages, either or both, then it was the sworn duty of the jury to find for the plaintiff. The court was requested by the defendant to charge the jury that the plaintiff was not entitled to recover for anything that the conductor did in hauling plaintiff to Laurel and in requiring plaintiff to pay for his transportation to Laurel. The court further refused to charge the jury that the plaintiff could not recover if the agent in delivering the ticket, did so without saying anything to plaintiff with reference to the direction he should go. The court further refused to charge the jury that they could not inflict punitive damages on any theory of the case.

The instruction directed that plaintiff might recover actual damages or mental or physical worry or pain and embarrassment occasioned by the conductor collecting this fare. The conductor was obeying the law in collecting the fare and certainly liability can never be imposed for acts that are required under the law to be performed. A failure to collect the fare would have been violation of the federal statute. *L. & N. R. R. Co.* v. *Mottley*, 31 Sup. Ct. Rep. 265, 219 U. S. 467, 55 L. Ed. —; *I. C. R. R. Co.* v. *Messina*, 36 Sup. Ct. Rep. 368, 240 U. S. 395, 60 L. Ed. 297, 709. The instruction asked by the defendant and refused by the court, as appears on page 10 of the record, was in line with the duties of the railroad company, as imposed by the federal statute, was a correct statement of the law and should have been granted. The instruction given the plaintiff, as appears on page 8 of the record, imposes liability upon appellant if the ticket agent made a statement when he delivered the ticket, that caused the plaintiff to take the train going in a wrong direction. The instruction permits a recovery for physical or mental pain or embarrassment or actual damages, either or both, on page 12 of the record. The defendant requested the court to charge the jury that if the agent delivered the ticket to plaintiff without making any statements, that it was not liable. It will be observed that the plaintiff's father testified that he heard every word that was said, and that the agent handed the ticket to plaintiff without telling him anything about it. This was plaintiff's father, introduced in behalf of plaintiff, and plaintiff was bound by his testimony.

Plaintiff requested an interline ticket. The evidence shows that the agent could not issue it. It was issued at Gulfport at the general offices and forwarded to the agent to be delivered to plaintiff in exchange for the government request for transportation. The ticket expressed the contract between the railroad company and plaintiff and the railroad company would not be bound by any statement that plaintiff made, outside of and not expressed in

the contract. *Sevier* v. *V. & M. R. R. Co.,* 61 Miss. p. 8; *Gage* v. *I. C. R. R. Co.,* 75 Miss. 17.

The instruction requested by the defendant and refused by the court as shown on page 12 was the converse of the instruction given the plaintiff on page 9, and certainly if the plaintiff's instruction was given, this instruction should have been given the defendant.

It was error to admit the evidence of plaintiff's suffering and physical and mental pain caused by the operation for appendicitis some weeks before he took passage upon defendant's train. The pain and suffering that he was then undergoing were not proper elements of damage. The admission of this evidence by the court and the instructions given the plaintiff permitted a recovery for this physical and mental pain and worry. This condition and suffering were not proper elements of damage, and the admission of the testimony and the instruction allowing the recovery therefor was error.

The defendant requested the court to charge the jury that they could not inflict punitive damages in this case. Punitive damages cannot be inflicted except where there is a wilful, wanton, or grossly negligent wrong perpetrated. In the instant case it is clear from the evidence of plaintiff himself that he left home to go to Taylorsville and take passage on the train to Laurel with his companion, Steve Blackwell, who was not destined to go further than that point. The conductor was compelled by law to collect his fare. There was no element of tortious wrongdoing to support the theory of punitive damages.

The value of this ticket is all he is entitled to receive, and that value he can receive by surrendering it to the company and asking for its redemption. The peremptory instruction requested should have been granted.

*Sam Whitman,* for appellee.

The case rests, as we see it, on the question whether or not the said agents and employees for the appellant wrong-

fully and carelessly by words and conduct first caused appellee to board the wrong train from that on which he had been routed.  The appellant is a public service corporation, whose duty it is to carry passengers for hire when so requested and the fare or its equivalent tendered.

·Therefore, appellant having sold appellee in the first instance a ticket over a different route from that requested by the Government and reasonably expected to be traveled by appellee, and then and therefore having led him to believe that he was to travel over a different route, certainly was guilty of gross negligence, and should be made to respond in damages, actual and punitive shown to have been suffered by appellee.

In addition to the wrongs and injuries above referred to, the appellant was further guilty of gross negligence and wrong to appellee when its train conductor took up appellee's ticket and discovering that it did not read by Laurel, but on the contrary by Saratoga, informed appellee that he would take him on to Laurel and that Mr. Mason, presumably the agent there, would fix it right, and after Mason failed to fix up the matter, refused to surrender to appellee any part of his ticket until he had first paid for his transportation from Taylorsville to Laurel, notwithstanding that he had told appellee that he would take him on to Laurel and they would fix up the matter there.   And the appellee is not in the least concerned with whether or not the said Mason or the conductor could fix or arrange this matter at Laurel, so that he could proceed on his journey on his transportation.   The fact remains that they did not do so, and that this caused appellee great embarrassment and humiliation, and augmented his suffering which this very trip was being made to have relieved.   This is not so much a breach of contract; it is simply an old fashioned common-law tort.   When a railroad company issues to a passenger a ticket over a certain route after having led him as appellant led this appellee to believe, that his ticket would call for, and that he would travel over a different route, and he is thus misled into travelling that differ-

ent route as appellee was in this instance, not alone by appellant's agent Bryant, but also by its other agent, the train conductor, and suffers injury as the testimony clearly shows appellee did, then and in that event he is entitled to damages both actual and punitive. The jury in this case held and found that appellee had been damaged in the sum of two hundred dollars, and we think the testimony warranted them in so doing and the court in rendering the judgment that it did render for appellee, and hence, that it should not be disturbed.

SYKES, P. J., delivered the opinion of the court.

The appellee, as plaintiff in the circuit court, sued the defendant railroad company for damages, and recovered a judgment for the sum of two hundred dollars. The declaration sues for actual damages, and is based upon the alleged negligence of a ticket agent and of the conductor of a train.

The testimony for the plaintiff showed: That he had been in the United States navy and had been operated on in a hospital in New Orleans for appendicitis, that this operation had not proven a success, and it became necessary for him to return to the hospital for further treatment. At this time he was living near a station on the defendant's line of railway called Taylorsville. He received from the government a request upon this railroad for transportation to New Orleans. The agent at this station was notified of this fact, and stated to plaintiff that it would be necessary for him to get this ticket from Taylorsville to New Orleans from the general offices of the company in Gulfport. This transportation was requested by the local agent, and in due course of time was sent him, whereupon he notified plaintiff that his transportation had arrived. The ticket read via Saratoga and Hattiesburg. There was also another route to New Orleans from Taylorsville via Laurel and Hattiesburg. The train by Laurel left Taylorsville in the morning, while the train to Saratoga left in the afternoon. Stating the contention of the plaintiff most strongly in his favor, he called for his ticket in

the morning before the train for Laurel left, and was told
by the ticket agent that he could go by Laurel on this ticket,
and that he relied upon the statement of the agent, and
did not read his ticket. He boarded this train, and the con-
ductor when he examined his ticket told him that he did
not understand it, and in effect that it was good by Sara-
toga and not by Laurel. However, that he would try to
get the matter straightened up for plaintiff when they
reached Laurel. The conductor kept the entire ticket. The
plaintiff did not tell the conductor that the agent had in-
formed him that he could go to New Orleans by Laurel.
He does not seem to have made any explanation whatever
to the conductor about the representations of the ticket
agent. After the train reached Laurel the conductor con-
sulted the station agent there, and was told by the station
agent that there was nothing that he could do to rectify
any mistake in the ticket, but that all he (the conductor)
could do would be to collect from plaintiff the cash fare
from Taylorsville to Laurel. That the conductor would
not give the plaintiff his ticket until he had paid this cash
fare (ninety-five cents.) That he had just enough money
with him to have paid his hotel bill in New Orleans, and
that a friend of his had to go out in Laurel and borrow
enough money to lend him to pay this cash fare of ninety-
five cents and an additional cash fare of one dollar and
thirteen cents, the fare from Laurel to Hattiesburg. There
is a good deal of testimony in the record about plaintiff
having been operated on for appendicitis and not being
well at the time of the occurrences above detailed, but
there is no testimony whatever to show that his pain and
suffering from his illness was in any wise aggravated by
these matters. The effect of his testimony merely is that
he was somewhat annoyed and embarrassed over the oc-
currence. As a matter of fact, he reached New Orleans
twelve hours earlier than he would, had be gone the route
indicated by his ticket.

The declaration does not seek to recover punitory dam-
ages. In fact, even if it had, there are no elements upon

129 Miss.—53

which these damages could be recovered in this case.

This court has many times held that there can be no recovery of actual damages for annoyance, worry, or mental anguish disconnected from physical suffering.

The only actual damage sustained by the plaintiff in this case was the amount paid out by him for cash fare, which amounts to two dollars and eight cents. Since the jury have decided the facts in favor of the plaintiff, we will enter the proper judgment here for him for this amount.

Reversed, and judgment here for appellee.