CONTINENTAL CASUALTY CO. v. GARRETT.

(Division B. June 3, 1935. Suggestion of Error Overruled Sept. 16, 1935).

[161 So. 753. No. 31776.]

Lotterhos & Travis, of Jackson, and **J. B. Sykes**, of Mendenhall, for appellant.

Edwards & Edwards, of Mendenhall, for appellee.

**Griffith, J.,** delivered the opinion of the court.

Appellee filed a declaration against appellant in which he charged that appellant was and is engaged in this state in the business of health and accident insurance; that appellee had for a long time carried a health and accident policy with appellant company; that appellee had been sick and was confined to his bed because of that sickness for approximately three months; that, having approached a recovery, he filed his claim for the compensation due him under said health policy; that a few days after the forwarding of said claim the appellant company sent one of its authorized agents to the home of appellee to adjust said claim; that the said agent came to the home of appellee and there began to deny the claim, and, in that connection, without provocation, used towards appellee certain insulting and abusive language, which is set out in two counts. In the first count the language charged is that the agent said to appellee, "You are a liar." In the second count the following language is charged: "If I paid that claim I would be sent down the road. A few days ago I caught a woman in bed with her shoes on stealing from the company playing sick and I am getting tired of people stealing from the company like that." And the count averred that the agent meant by said language willfully and maliciously to falsely imply and charge that appellee was presenting a feigned and fraudulent claim and was endeavoring to steal from the company. The count further averred that in his sick and enfeebled condition, appellee was unable to defend himself, and the insulting language caused him to suffer mental anguish,

and that his physical ailments were thereby aggravated and prolonged to his great damage.

Although the utterance of the language charged in the first count was proved, appellee on the trial abandoned that count, which was one in slander, and elected to stand on the second count, as for a personal injury. The allegations of the second count were also proved, together with what we regard as dependable proof, including the fair inferences to be drawn from the evidence, of physical injury, at least to some appreciable extent. There was sufficient proof of all such surrounding facts, circumstances, and conduct on the part of the agent on the occasion and at the place in question as would justify the jury in finding, as they did find, that the quoted language in the second count was not merely an uncivil argument or discussion, but was willfully intended to imply and charge and to be understood as implying and charging that the appellee's claim was a fraudulent and fictitious claim, known to appellee as such, and that appellee was engaged in the equivalent of an attempt to steal from the company, whereas the evidence is undisputed that any such implication or charge was without any foundation whatsoever in fact. It is due to the agent to state that he denied the language and disavowed any such intent, but we are, of course, bound by the verdict, so far as the facts are concerned, there being ample evidence to sustain the jury in that regard.

The great weight of authority, under the common law, is that mere words, however offensive or insulting, when the conduct of the party does not amount to an assault, are not actionable. See Johnson v. Sampson, 167 Minn. 203, 208 N. W. 814, 46 A. L. R. 772; Brooker v. Silverthorne, 111 S. C. 553, 99 S. E. 350, 5 A. L. R. 1283, and the cases cited in the notes to those reprints. And it is upon this theory that appellant relies in this case.

Whether this general doctrine of the common law is

to be put upon the basis that the violation of right in such cases belongs merely to the domain of good morals and is not a wrong of which the law should take cognizance, or whether it has been thought that the door would be opened too wide for the maintenance of fictitious claims, or, if not fictitious, that injuries resulting from such wrongs are so difficult of estimation according to dependable legal standards that it would be better in the interest of the community to deny them, we need not now pause to consider; but we might, with propriety, add that if the latter be the ground upon which the common law judges were moved to deny the action, our own experience under our actionable words statute, section 11, Code 1930—enacted in the early days of our state's history in disparagement of the dangerous practice of dueling then prevalent—has been such as to largely disprove the fears entertained by the ancient judges.

Conceding, for the sake of the argument, that under the general doctrine of the common law, above stated, there would be no right of recovery in the present case, we are of the opinion that the issue here is to be disposed of rather under that line of case which give particular recognition to actions arising out of violations of the rights of the home. All our modern notions of law, common and statutory, and particularly in this state, comprise the requirement that the home is a place where the occupant and his family shall be entitled, not as a matter of sentiment, or of morals, or of good manners, but of positive law, to the right of quiet and peaceable enjoyment, free from hostile intrusions, whatever the character of the offensive intrusions may be, which includes, as its mere statement will prove, the right to be free from insults inflicted by those who intrude themselves within the precincts of the home; and that a violation of that right shall be deemed an actionable tort. See, for instance, Engle v. Simmons, 148 Ala. 92, 41 So.

1023, 7 L. R. A., (N. S.), 96, 121 Am. St. Rep. 59, 12 Ann. Cas. 740; Watson v. Dilts, 116 Iowa, 249, 89 N. W. 1068, 57 L. R. A. 559, 561, 93 Am. St. Rep. 239; Hill v. Kimball, 76 Tex. 210, 13 S. W. 59, 7 L. R. A. 618; and compare Singer Sewing Mach. Co. v. Stockton (Miss.), 157 So. 366.

Thus we have (1) an actionable tort; (2) and injury as a proximate result thereof; and (3) a situation then and there known to the wrongdoer from which he should reasonably have anticipated the injury as the natural and probable consequence of his conduct. The judicial authorities have not failed to recognize the undeniable fact that a strong emotion of the mind, and particularly when that emotion is highly unpleasant, as from a sense of insult, may produce a physical, personal injury. See Engle v. Simmons, supra, and the authorities therein cited. The fact that it might be said that a person in whom such an emotion has been aroused is of perfect health and of strong, normal constitution and is thereby not hurt to any such degree as to permit an attempt to measure the same as compensatory damages under the common law, or if actually hurt in a particular case, the hurt was one which was not to have been reasonably anticipated, has but little to do with a case such as we have now before us. Here the wrongdoer entered the home of a sick man, known to the offender to be sick, and then and there the intruder, who became such from the moment of his wrongful conduct, insulted the sick man in such a way that as a reasonably prudent person he should have known and anticipated that some physical detriment would probably result. And, as already mentioned, the proof shows that such detriment did result here, certainly to a sufficient extent to form the basis for the infliction of punitive damages, on account of the willfulness of the wrong and injury, as the jury were instructed they might inflict, in case they found from the facts that the wrong was wan-

ton and willful. And we have already mentioned that the jury were justified from the evidence in so finding; they returned a verdict for two hundred fifty dollars, and we think it should be allowed to stand.

Affirmed.