## Saenger Theatres Corporation *v.* Herndon.

(Division B.   Jan. 10, 1938.)

[178 So. 86.   No. 32957.]

Rosen, Kammer, Wolff and Farrar, of New Orleans, La., and George W. Currie, of Hattiesburg, for appellant.

Currie & Currie, of Hattiesburg, for appellee.

Argued orally by **George W. Currie** and **Gibbons Burke** for appellant, and by **Dan Currie** for appellee.

**Griffith, J.,** delivered the opinion of the court.

On the day of the wrong and injury herein complained of, appellant was engaged in the operation of a moving picture theater, and appellee was a girl, fourteen years of age, in the ninth grade in high school, and who on Saturdays was a weekly patron of said theater. Some of the other patrons had reported to the management that certain young girls, of whom appellee was said to be one, had theretofore been annoying the audiences by talking and giggling during the performances and by walking or running up and down the aisles. The management had determined to apply a corrective in response to these reports, and had directed those in immediate charge of the theater to exclude therefrom the girls who had been reported as indulging in the aforesaid conduct.

Thereafter, on a Saturday afternoon, appellee, in company with her aunt, presented herself with her ticket for admission to the theater, but the doorman or ticket taker refused to honor the ticket and directed appellee to go

to the ticket office a few steps away and receive return of the price paid. Appellee inquired at once of the ticket taker why she was being excluded, and the said agent angrily replied substantially in words as follows: "That she could not attend the show and that he would not permit her to enter; that she had been guilty of such indecent conduct as rendered her unfit and an improper character to enter the show; that she had been guilty of indecent and low-down conduct in the show." This language is averred to have been uttered in the hearing of divers persons then present; and it is shown by the evidence that the effect of it was to send the girl away crying and to produce such shame and humiliation that she went to bed and had to receive home treatment of sedatives to relieve the shock and mental suffering.

It seems almost unbelievable that a grown man of even half sense would have been guilty of that sort of language addressed to a 14 year old girl, and the suspicion at once arises that the three witnesses who testified to it have materially exaggerated what was said. Nevertheless the said three witnesses, nearest in presence to the occurrence, testified to it positively, and the jury, as men of observation and experience in the affairs of life, may well have had in view the fact that some minor employees, armed with a little brief authority, will often arrogantly demean themselves in the manner that these witnesses averred was the conduct of this ticket taker on this occasion. But however they may have reasoned it, the jury believed the evidence of the three witnesses as against the denial of the ticket taker; and this ends the matter on that issue.

It is the duty of the management of a theater, not only to themselves and to the success of the business, but also to their audiences, to see to it that every patron shall so conduct himself or herself that other patrons may witness the performances in reasonable quietude and in an atmosphere of good order. To the end that the management may fully perform those duties, the right is

given the management to eject disorderly persons or to revoke the license to enter which is conferred by the purchase of a ticket of admission, and the privilege of revocation may be exercised before admission within the house. 26 R. C. L. page 704; 62 C. J., page 861. And see the cases collated in the opinion Boswell v. Barnum & Bailey, 135 Tenn. 35, 185 S. W. 692, L. R. A. 1916E, 912.

Inasmuch as the ample power and privilege of revocation is given in the interest of the proper conduct of the business and of good order therein, it must follow that the power or privileges must be exercised within the limitations of good order, which is to say, it must be upon the condition or within the limitation that it shall be exercised without insult, abuse, or defamation. Boswell v. Barnum & Bailey, supra, and notes, pages 914-916 of L. R. A. 1916E. That the stated condition or limitation was grossly and wantonly violated or exceeded on the occasion in question, nothing is needed for complete disclosure other than to point to the quoted language used by the ticket taker, and to the age and sex of the victim.

The court was, therefore, not in error in admitting evidence of mental pain and suffering, although unaccompanied by a distinct physical injury. Ordinarily, it is true, damages for mental pain and suffering not accompanied by a distinct physical injury are not allowable; but this rule does not include cases of wanton or shamefully gross wrong, such as the case now before us. 8 R. C. L. pages 531, 532, and see cases cited 17 C. J. page 831 under note 56. And for the same reason the court properly submitted to the jury the issue of punitive damages; and, although the verdict of $1,000 may seem large, it is not so excessive, if excessive at all, as that, under settled rules, we are authorized to interfere. Teche Lines v. Pope, 175 Miss. 393, 401, 166 So. 539.

The other assigned errors have been examined, but

we do not find enough in them to require a reversal, and, therefore, the judgment must be affirmed.

Affirmed.