LYONS *v.* ZALE JEWELRY COMPANY, et al.

No. 42382          February 18, 1963          150 So. 2d 154

*David A. Harris,* Jackson, for appellant.

*Henley, Jones & Henley,* Jackson, for appellees.

KYLE, J.

This case is before us on appeal by Mrs. Irene Lyons, plaintiff, from a judgment of the Circuit Court of the First Judicial District of Hinds County, sustaining a demurrer filed by Zale Jewelry Company, defendant, to the plaintiff's declaration in an action for damages for extreme shock, mental anguish and nervous shock and physical pain and suffering allegedly suffered by the plaintiff as the result of willful and wanton, vile and abusive language and threats used by the Company's employee and co-defendant in a telephone conversation with the plaintiff for the purpose of enforcing payment of a debt claimed to be due and owing to the defendant by the plaintiff's 23-year-old son. The damages sought to be recovered were damages suffered on account of abusive language directed to the plaintiff during a long distance telephone conversation on March 22, 1961.

The plaintiff's declaration was filed on June 29, 1961, against Zale Jewelry Company and Louis Welch as defendants. The plaintiff alleged in her declaration that Zale Jewelry Company was a Mississippi corporation domiciled in the City of Jackson, Mississippi; that the defendant Welch at the time the plaintiff's cause of action arose was an employee of Zale Jewelry Company, but since that time had removed himself from the jurisdiction of the court and his whereabouts were unknown.

The plaintiff further alleged that she was a practical nurse by profession, and that at the time of the injury complained of she was employed in a nursing capacity by Mrs. S. F. Thigpen, the wife of S. F. Thigpen, Mayor of the Town of Heidelberg, Mississippi; and that, while engaged in the performance of her duties as a practical

nurse in the Thigpen home in the Town of Heidelberg, on March 22, 1961, she received a telephone call about 6:30 o'clock P.M. from Jackson, Mississippi, from the defendant Welch, who represented himself as an attorney for Zale Jewelry Company, inquiring as to the whereabouts of plaintiff's son, Kenneth Lloyd Myrick, who owed a debt to Zale Jewelry Company. The plaintiff further alleged that she informed Welch that she did not know the exact whereabouts of her son, Kenneth, but he was "somewhere in Laurel, Mississippi"; that Welch then became abusive and vulgar in his language toward her and said to her, "I know dam good and well you do know where your son Kenneth is"; that plaintiff replied that she did not know where Kenneth was, and Welch then said, "What kind of a dam mother are you, not to know where your son is. Your son owes Zale Jewelry Company a large debt and I intend to collect it." The plaintiff alleged that she then stated to Welch that she did not know that Kenneth owed the debt, but if he did, she wanted him to pay it, that Kenneth was seeking work in Laurel, and she had not heard from him in several weeks; and Welch then shouted back to her over the phone, "You're a dam liar * * * I know dam good and well you know where he is, and you are either going to get him to pay this debt to Zale Jewelry, or I am going to make you pay for it." The plaintiff alleged that she replied that she was not responsible for the debts of her son, who was 23 years of age, had incurred. Whereupon Welch became highly incensed and yelled even louder in an abusive tone of voice the following words: "Listen you, g .. d .. bitch, if you don't pay this bill to Zale Jewelry Store, I am going to send the law down there tonight to put both you and your son into jail."

The plaintiff alleged that, after making that statement, Welch slammed the phone down; that she then hung up the receiver, sat down in a nearby chair, and

did not remember anything until three hours later when Mayor Thigpen returned to his home and found her slumped over in the chair in a state of shock; that Mayor Thigpen immediately called in Dr. William R. Eure from Bay Springs, who found the plaintiff in a state of extreme shock, writhing in bed, and in a hysterical condition. The plaintiff further alleged that, as a result of the insults and shock to which she had been subjected during her telephone conversation with Welch, she was confined to her bed and was unable to work because of extreme nervousness and severe headaches; and since that time she has been physically and emotionally unable to perform her work and earn her livelihood.

The plaintiff alleged that she was a woman 45 years of age, and was in good health earning $350 per month as a nurse at the time she received the telephone call mentioned above; that the defendant Welch, at the time he made the call was an employee of the defendant Zale and was working in the course of his employment in an effort to ascertain the whereabouts of her son and collect the debt owed by her son to the Jewelry Company; and that, under the doctrine of respondeat superior, the defendant Jewelry Company was liable, jointly and severally, with its employee for the damages the plaintiff had suffered as a result of the abusive language used by Welch toward the plaintiff.

Finally, the plaintiff alleged that, as a direct and proximate result of the vile and abusive language used by the defendant Welch during the course of the telephone conservation mentioned above, she had suffered a severe shock to her nervous system to the extent that her health and emotional well-being had been greatly impaired, her nervous system had been damaged and shattered; and she had incurred a loss of earnings in the amount of $1,100, plus medical bills in the amount of $125; that she had suffered further actual damages on account of the great mental and physical distress

which she had experienced as a result of the malicious, vile and wanton language which Welch had used toward her, and that she had suffered great physical and mental pain and serious injury and agony to her feelings because of the humiliation, disgrace and indignities heaped upon her by the defendant Welch without any just cause whatsoever, and that she was also entitled to punitive damages for the willful, wanton, callous and intentional pain inflicted upon her.

The defendant Jewelry Company demurred to the declaration and assigned as ground therefor that the declaration did not state a cause of action. The circuit judge was of the opinion that the case did not rise higher than the level of actionable words and that under the pleading a common law action for damages for personal injury could not be sustained. The plaintiff declined to amend her declaration, and an order was therefore entered dismissing the plaintiff's suit with prejudice.

The only question presented for our decision on this appeal is whether or not the facts alleged in the plaintiff's declaration, if proved, were sufficient in law to support a recovery of damages for the alleged severe mental distress and emotional and physical injury resulting from the wrongful conduct of the defendant's employee Welch.

It has been frequently stated that under the common law mental anguish without actual injury will not support a recovery of damages. 25 C.J.S. 550, Damages, Sec. 64; Western Union Telegraph Co. v. Rogers (1891), 68 Miss. 748, 9 So. 823; Gulf & S.I.R. Co. v. Beard (1922), 129 Miss. 827, 93 So. 357; Doherty v. Mississippi Power Co. (1937), 178 Miss. 204, 173 So. 287; Beaty v. Buckeye Fabric Finishing Co. (1959), 179 F. Supp. 688; Ex parte Hammett (1953), 259 Ala. 240, 66 So. 2d 600; Harned v. E-Z Finance Co. et al. (1953), 151 Tex. 641, 254 S. W. 2d 81; that mere words, however offensive

or insulting, when the conduct of the party does not amount to an assault, are not actionable. Prosser on Torts, 57, 58, and cases cited. See also Kramer v. Ricksmeier (1913), 159 Iowa 48, 139 N.W. 1091, 45 L.R.A. (N.S.) 928; Republic Iron & Steel Co. v. Self (1915), 192 Ala. 403, 68 So. 328, L.R.A. 1915F 516; Brooker v. Silverthorne (1918), 111 S. C. 553, 99 S. E. 350, 5 A.L.R. 1283; Johnson v. Sampson (1926), 167 Minn. 203, 208 N.W. 814, 46 A.L.R. 772; Oehler v. Bamberger & Co. (1926), 4 N.J. Misc. 1003, 135 A. 71; Nowell v. Henry (1943), 194 Miss. 310, 12 So. 2d 540; Walker v. Tucker (1927), 220 Ky. 363, 295 S.W. 138, 53 A.L.R. 547; Maze v. Employees' Loan Soc. et al. (1927), 217 Ala. 44, 114 So. 574; Bartow v. Smith (1948), 149 Ohio St. 301, 78 N.E. 2d 735, 15 A.L.R. 2d 94.

It is clear, however, that from the very earliest times the law has allowed recovery for mental distress under some circumstances, where the act of defendant producing such distress also involved an independent tort of some kind, such as a trespass on plaintiff's person or property, a negligently caused physical injury, or injury to reputation, freedom of movement, or right of privacy. In addition to these instances where damages for mental distress are regarded as "parasitic" upon another tort, there are a number of special instances where at least some of the courts have traditionally recognized a more or less independent right to recover for emotional distress.

In Prosser on Torts, 2d Ed., Ch. 2, Sec. 11, pp. 40, 41 and 46, it is stated:

"The early cases refused all remedy for mental injury, unless it could be brought within the scope of some already recognized tort. Thus it was held that mere words however violent, threatening or insulting, did not constitute an assault, and hence afforded no ground for redress. * * * But if some independent tort, such as assault, battery, false imprisonment, or seduction could be made

out, the cause of action served as a peg upon which to hang the mental damages, and recovery was freely permitted. Such 'parasitic' damages were the entering wedge.

"It has gradually become recognized that there is no magic inherent in the name given to a tort, or in any arbitrary classification, and that the infliction of mental injury may be a cause of action in itself. Its limits are as yet ill defined, but it has been extended to its greatest length in the case of international acts of a flagrant character, whose enormity adds especial weight to the plaintiff's claim, and is in itself an important guarantee that the mental disturbance which follows is serious and not feigned * * *.

"So far as it is possible to generalize from the cases, the rule which seems to be emerging is that there is liability for conduct exceeding all bounds usually tolerated by society, of a nature which is especially calculated to cause and does cause mental damage of a very serious kind."

As stated by the textwriter in an extended annotation on Torts — Emotional Disturbances, which appears in 64 A.L.R. 2d p. 100, 119, in many of the early cases statements recognizing generally that there can be no recovery for emotional distress alone can be characterized as dicta, and there now appears to be a definite trend toward the recognition of a right to recover for a severe disturbance of mental or emotional tranquility resulting from an unprivileged act of defendant reasonably calculated to cause grave mental distress to plaintiff and committed intentionally or recklessly.

In the case of Continental Casualty Co. v. Garrett, 173 Miss. 676, 161 So. 753, the Court held that although at common law, mere words, however offensive or insulting were not actionable, unless the conduct of the party amounted to an assault, a person and his family have a right to quiet and peaceable enjoyment of their

home free from hostile intrusions or insults, and a violation of such right is an actionable tort; and that where a health insurer's agent went to a sick man's home and willfully and wantonly called him a liar, and charged him with attempting to cheat the company on a fraudulent claim, the insurer was liable for the physical injury resulting from emotions aroused in the sick man. In Saenger Theatres Corporation v. Herndon (1938), 180 Miss. 791, 178 So. 86, the Court said: "Ordinarily, it is true, damages for mental pain and suffering not accompanied by a distinct physical injury are not allowable; but this rule does not include cases of wanton or shamefully gross wrong * * *."

The rule denying the right to maintain an action for a bodily injury or illness resulting from a mental or emotional disturbance is most frequently applied, or stated to be applicable, in cases of negligence. 25 Am. Jur., 402, Torts, Sec. 57. This Court has held in several cases that there can be no recovery for mental pain and suffering resulting from the merely negligent act of another unaccompanied by any physical or bodily injury. Western Union Telegraph Co. v. Koonce, 112 Miss. 173, 72 So. 893; Gulf & S. I. R. Co. v. Beard (1922), 129 Miss. 827, 93 So. 357; Doherty v. Mississippi Power Co. (1937), 178 Miss. 204, 173 So. 287. Many courts have held that there may be a recovery for the physical consequences of mental injury due to fright occasioned by the negligent act of the defendant. But the courts generally have displayed considerable reluctance to extend any doctrine of recovery for mental distress alone to the situation where the defendant is charged only with ordinary negligence. Doherty v. Mississippi Power Co., supra; Arnold v. Spears (1953), 217 Miss. 209, 63 So. 2d 850; Williamson v. Bennett (1960), 251 N.C. 498, 112 S.E. 2d 48.

(Hn 1) In general, damages for mental anguish or suffering are recoverable when they are the natural or

proximate result of an act committed maliciously, intentionally, or with such gross carelessness or recklessness as to show an utter indifference to the consequences when they must have been in the actor's mind. In most jurisdictions in fact, damages are recoverable for mental anguish and suffering caused by a willful, wanton, malicious, or intentional wrong, even though no bodily injury is sustained or other pecuniary damage alleged or proved. 15 Am. Jur., 596, Damages, Sec. 179, and cases cited. See also Gadbury v. Bleitz (1925), 133 Wash. 134, 233 P. 299, 44 A.L.R. 425; Wilson v. Wilkins (1930), 181 Ark. 137, 25 S.W. 2d 428; Bowles v. May (1932), 159 Va. 419, 166 S.E. 550; La Salle Extension University v. Fogarty (1934), 126 Neb. 457, 253 N.W. 424, 91 A.L.R. 1491; Continental Casualty Co. v. Garrett (1935), 173 Miss. 676, 161 So. 753; Kirby v. Jules Chain Stores Corp. (1936), 210 N.C. 808, 188 S.E. 625; Saenger Theatres Corp. v. Herndon (1938), 180 Miss. 791, 178 So. 86; Clark v. Associated Retail Credit Men (1939), 70 App. D.C. 183, 105 F. 2d 62, 6 NCCA (NS) 564; Kirksey v. Jernigan (Fla. 1950), 45 So. 2d 188, 17 A.L.R. 2d 766; Stafford v. Steward (1956 Tex. Civ. App.), 295 S.W. 2d 665; Delta Finance Co. v. Ganakas (1956), 93 Ga. App. 297, 91 S.E. 2d 383.

In American Law Institute Restatement, Torts, 1948 Supp., the rule is stated as follows: "Sec. 46. Conduct intended to cause emotional distress only * * *. One who, without a privilege to do so, intentionally causes severe emotional distress to another is liable (a) for such emotional distress, and (b) for bodily harm resulting from it." In its comment on this rule appears the following: "An intention to cause severe emotional distress exists when the act is done for the purpose of causing the distress or with knowledge on the part of the actor that severe emotional distress is substantially certain to be produced by his conduct. * * * If an act is done with the requisite intention, it is immaterial

that the actor is not inspired by any personal hostility to the other. * * * The interest in freedom from severe emotional distress is regarded as of sufficient importance to require others to refrain from conduct intended to invade it. Such conduct is tortious."

In Bowles v. May (1932), 159 Va. 419, 166 S.E. 550, the Court, in discussing the question of recovery of damages for severe mental shock said: "It is now a well-accepted fact that terror or a severe mental shock may be the direct and proximate cause of wreck to the nervous system, the consequence of which may be a visible physical injury. When such fright is due to a willful, wanton, and vindictive wrong, recovery is generally permitted, notwithstanding the fact that there is no contemporaneous injury from without."

In Gadbury v. Bleitz (1925), 133 Wash. 134, 233 P. 299, 44 A.L.R. 425, the record showed that an undertaker kept the body of the plaintiff's son, and refused to cremate it, in order to induce plaintiff to pay for the previous funeral of a son-in-law. Plaintiff lost weight, and the shock "materially affected her health." Recovery was allowed because the wrong was willful.

In Kirby v. Jules Chain Stores Corporation (1936), 210 N.C. 808, 188 S.E. 625, the Court held that a complaint in an action against a corporation and its collecting agent for a trespass to the person by calling plaintiff a deadbeat and threatening to have her arrested when she said she had nothing to pay on her account with the corporation, resulting in the plaintiff's illness and the premature birth of a dead child to her, stated a cause of action; that generally damages are not recoverable for mere fright, but may be recovered where some physical injury attends the cause of fright, or the latter is such as to produce physical or mental impairment directly and naturally resulting from the wrongful act.

In Saenger Theatres Corporation v. Herndon (1938), 180 Miss. 791, 178 So. 86, the Court held that, while ordinarily damages for mental pain and suffering not accompanied by a distinct physical injury are now allowable, this rule does not include cases of wanton or shamefully gross wrong, and that substantial damages were properly allowed a 14-year-old girl, who, on inquiring why she was refused admission to the defendant's theatre was told, in the hearing of others, that it was because she had been guilty of such indecent conduct as rendered her an improper character, and had been guilty of low down conduct in the show, with the result that such shame and humiliation was produced that she had to go to bed and receive sedatives.

In Delta Finance Co. v. Ganakas (1956), 93 Ga. App. 297, 91 S.E. 2d 383, the Court held that, where the defendant's agent, knowing that the plaintiff, an eleven-year-old girl, was alone in the home, demanded admittance so that he could repossess a television set and threatened to have the girl arrested and put in jail if she did not admit him, a verdict for damages for the resulting mental distress was justified, the Court saying that there was a showing of a willful and positive tort the natural consequence of which was the mental suffering occasioned by the shock to the plaintiff's nervous system.

In the extended annotation on Torts, Emotional Disturbances, which appears in 64 A.L.R. 2d 100, 143, the textwriter says: "A number of courts have held, and it is probably now the accepted rule in a majority of the jurisdictions where the question has been passed upon, that where definite and objective physical injury is produced as a result of emotional stress wrongfully caused by defendant, he may be held liable for such physical consequences notwithstanding the absence of any physical impact upon the plaintiff at the time of the mental shock." Hill v. Kimball (1890), 76 Tex.

210, 13 S.W. 59, 7 L.R.A. 618; Kimberly v. Howland (1906), 143 N.C. 398, 55 S.E. 778, 7 L.R.A. (N.S.) 545; Whitsel v. Watts (1916), 98 Kan. 508, 159 P. 401, L.R.A. 1917A 708; Bowles v. May (1932), 159 Va. 419, 166 S.E. 550; Kirby v. Jules Chain Stores Corp. (1936), 210 N. C. 808, 188 S.E. 625; Duty v. General Finance Co. (1954), 154 Tex. 16, 273 S.W. 2d 64; Kaufman v. Western Union Tel. Co. (1955, C.A. 5 Tex.), 224 F. 2d 723, cert. den. 350 U.S. 947, 100 L. Ed. 825, 76 S. Ct. 321; Colla v. Mandella (1957), 1 Wis. 2d 594, 85 N.W. 2d 345, 64 A.L.R. 2d 95.

The general rule is that a creditor has a right to urge payment of a just debt, and to threaten to resort to proper legal procedure to enforce the same. Hence, the creditor is not ordinarily liable for a mental or emotional disturbance, or for a bodily injury or illness, resulting from such acts. Kramer v. Ricksmeier (1913 Iowa), 139 N.W. 1091, 45 L.R.A. (N.S.) 928; Oehler v. Bamberger (1926, N.J.), 135 A. 71; Lewis v. Physicians and Dentists Credit Bureau, Inc. (1947, Wash.), 177 P. 2d 896. However, many courts have held that improper methods used to collect a debt may be the basis for the maintenance of an action for a mental or emotional disturbance produced thereby, or for a bodily injury or illness resulting from such mental or emotional disturbance. 52 Am. Jur., 422, 423, Torts, Sec. 75, and cases cited. When the creditor's agents become vindicative and abusive in their collection efforts and resort to insulting and humiliating language, whether verbally or by letter, the courts have, in many instances, held that the creditor may be obliged to respond in damages for injuries caused to the debtor thereby. Clark v. Associated Retail Credit Men (1939), 70 App. D.C. 183, 105 F. 2d 62, 6 N.C.C.A. (N.S.) 564; Barnett v. Collection Service Co. (1932), 214 Iowa 1303, 242 N.W. 25; Herman Saks & Sons v. Ivey (1934), 26 Ala. App. 240, 157 So. 265; La Salle Extension University v. Fogarty

(1934), 126 Neb. 457, 253 N.W. 424, 91 A.L.R. 1491; Kirby v. Jules Chain Stores Corp., supra; Continental Casualty Co. v. Garrett, supra; Bowden v. Spiegel, Inc. (1950), 96 Cal. App. 2d 793, 216 P. 2d 571.

In Clark v. Associated Retail Credit Men, supra, the Court in holding the defendant liable for damages resulting from abusive letters, said: "In such circumstances, recovery has repeatedly been allowed. * * * The infliction of bodily harm by words, like the infliction by blows, may on occasion be privileged. * * * But neither beating a debtor nor purposely worrying him sick is a permissible way of collecting a debt. We do not suggest that creditors must use care to avoid shocking their debtors or may not, for purposes of collection, intentionally inflict some worry and concern. But * * * they should refrain from conduct intended or likely to cause physical illness."

In Barnett v. Collection Service Company, supra, the Court sustained a jury verdict for the plaintiff, where it appeared that collection letters sent to her by the defendant were coarse and vindictive, contained threats to sue, to appeal to plaintiff's employer "until he is so disgusted with you that he will throw you out the back door," together with a suggestion that the plaintiff was as bad as a criminal, on the ground that the acts of the defendant were willful and were intended to cause the plaintiff mental pain and anguish. In the more recent case of Curnett v. Wolf (1953), 244 Iowa 683, 57 N.W. 2d 915, the plaintiff sued the four defendants Wolf, as co-partners doing business as the Mason City Broadcasting Company, for wages due under a contract of employment; and by an amendment to his petition damages, actual and exemplary, were asked for mental pain and humiliation occasioned by willful and malicious threats made to him by the defendant Louis Wolf in a telephone conversation. The Court held that recovery could be had for mental pain, though no physical injury

resulted, if the act causing such pain was willful or malicious, but that the award of damages was excessive and the judgment would be affirmed only on condition that the plaintiff file a specified remittitur.

In Bowden v. Spiegel, supra, the Court held that a complaint stated a cause of action which averred that defendant's agent called plaintiff on a neighbor's telephone saying that there was an emergency and when plaintiff answered accused her of not paying a bill at defendant's store and threatened to cause her trouble and court action if she did not immediately pay the bill, the accusation was understood by the neighbors who heard the telephone conversation, the accusation was false, such agent acted maliciously and without probable cause, and as a result plaintiff became ill and remained so, since intentional use of such an unreasonable method of collecting a debt which proximately results in physical illness is actionable. In its opinion in that case the Court said: "The important elements are that the act is intentional, that it is unreasonable, and that the actor should recognize it as likely to result in illness. Given these elements the modern cases recognize that mere words, oral or written, which result in physical injury to another are actionable." See also cases cited.

In the case of Duty v. General Finance Company (1954), 154 Tex. 16, 273 S.W. 2d 64, borrowers sued to recover for mental anguish and physical injuries alleged to have been willfully and wantonly inflicted on them by wrongful devices practiced by lenders in attempting to collect claimed balances due them on notes given by the borrowers. The harrassments alleged in the plaintiffs' petition consisted of daily telephone calls to both Mr. and Mrs. Duty, which extended to great lengths; threatening to blacklist them with the Merchants Retail Credit Association; accusing them of being deadbeats; talking to them in a harsh and insinuating loud voice; threatening to cause both plaintiffs to lose their jobs

unless they made the payments demanded, etc. It was further alleged that all of the above acts were willful and were committed with knowledge that they could cause the plaintiffs' mental injury, and that the foregoing course of conduct caused the petitioners to develop a state of high nervousness, irritability and inability to perform their work; that each suffered severe headaches, nervous indigestion, loss of sleep, and Mrs. Duty was discharged from her work at the cafe as a result of the excessive harassing attacks by the defendant and her decline in ability to work.

The trial court dismissed the petition as failing to state a cause of action. The El Paso Court of Civil Appeals, Eighth Supreme Judicial District, affirmed the trial court judgment and the plaintiffs brought error. The Supreme Court, Hickman C.J., held that damages for mental anguish, resulting in physical injuries allegedly caused by the manner in which the defendants attempted to collect balances due them on the notes given by the borrowers, would be recoverable. The judgments of the trial court and the Court of Civil Appeals were reversed and the cause remanded.

In its opinion in that case the Supreme Court of Texas said: "The majority opinion of the Court of Civil Appeals is based on the conclusion that the case is ruled by our decision in Harned v. E-Z Finance Company, 151 Tex. 641, 254 S.W. 2d 81, and that the language of that opinion clearly indicates that a cause of action was not alleged in this case. Petitioners do not attack that decision or call upon us to reconsider the question there decided. It is their position that, properly interpreted, the opinion in that case is no authority for denying them recovery in this case. We are in accord with their position. * * * In the Harned case no question of damages for physical injury, loss of property or reputation was involved. Our opinion recognized that, had there been an allegation of physical harm, a different

question would have been presented. In the instant case petitioners have alleged physical injury, loss of employment, and acts constituting, in effect, slander, as well as mental anguish. No authorities other than those cited in the Harned case, supra, need be cited in support of our conclusion that those allegations are sufficient to state a cause of action."

In the case that we have here it is argued on behalf of the appellant that this Court has recognized in several cases that a party suffering emotional distress and physical harm as the result of a wanton and grossly shameful wrong inflicted by the defendant or its agent by the use of abusive, intimidating and insulting language, has a right of action in the courts of this state to recover damages for the injury suffered in consequence thereof; and the appellant's attorney cites in support of his contention Continental Casualty Company v. Garrett, supra, and Saenger Theatres Corp. v. Herndon, supra.

In answer to the argument made on behalf of the appellant, the appellees' attorneys say that the Mississippi courts have followed the general common law rule that damages cannot be recovered for mental suffering alone, that this case does not fall within any of the recognized exceptions, and this Court would not be justified in creating "a new common law tort," as that term is used in several cases cited by the appellees' attorneys in their brief.

The two Mississippi cases mainly relied upon by the appellee, in support of its contention that the judgment of the lower court sustaining the demurrer to the plaintiff's declaration should be affirmed, are Doherty v. Mississippi Power Company (1937), 178 Miss. 204, 173 So. 287; and Nowell v. Henry (1943), 194 Miss. 310, 10 So. 2d 540. In the Doherty case, supra, the Court held that an electricity customer, whose electric lights were disconnected by the electric company for nonpayment of bills notwithstanding the customer's request that the

company apply accrued interest on the customer's deposit with the company in the payment of the bills, was not entitled to recover for mental suffering or subsequent physical injury and pain resulting therefrom. In Nowell v. Henry, supra, the Court held that, in an action for assault and battery, an instruction that the plaintiff should prevail if the defendants had used physical violence against, or "cussed or abused" plaintiff, was improper since it permitted a verdict for actual damages without proof of assault or battery, or despite the fact that the defendants had acted in self-defense. Neither of those cases, in our opinion, is controlling here.

The main cases from other jurisdictions cited and relied upon by the appellee are Ex Parte Hammett (1953), 259 Ala. 240, 66 So. 2d 600; Harned v. E-Z Finance Co. (1953), 151 Tex. 641, 254 S.W. 2d 81; and Slocum v. Food Fair Stores of Florida, Inc. (1958), 100 So. 2d 396. In the Hammett case the facts alleged as a basis for recovery of damages for mental suffering were somewhat similar to the facts alleged in the case that we now have before us, and the opinion rendered in that case supports the appellee's theory of nonliability in such case. A like statement might be made concerning the holding of the Texas Court in the Harned case; but the holding of the Texas Court in the Harned case was narrowly restricted by the decision rendered by the same court a year later in Duty v. General Finance Company, supra. In Slocum v. Food Fair Stores of Florida, Inc., the mental suffering and emotional distress complained of was alleged to have been caused by insulting language of the defendant's employee directed at the plaintiff while she was a customer in its store. Specifically, in reply to the plaintiff's inquiry as to the price of an item he was marking, the employee replied: "If you want to know the price, you'll have to find out the best way you can * * * you stink to me." The Court in that case simply held that the rude and

insulting remark of the defendant's employee was insufficient in law to constitute an actionable invasion of a legally protected right; and in denying recovery under the facts stated, the court said: "The unwarranted intrusion must be calculated to cause 'severe emotional distress' to a person of ordinary sensibilities, in the absence of special knowledge or notice. There is no inclination to include all instances of mere vulgarities, obviously intended as meaningless abusive expressions."

(Hn 2) After a careful review of the cases cited by the respective parties in their briefs and many other cases cited by the textwriters referred to in this opinion, we think the allegations of the plaintiff's declaration were sufficient to withstand a demurrer, and that the trial court erred in sustaining the demurrer filed by the defendant jewelry company.

We are not called upon to consider here the creation of an independent (new) cause of action in tort. This Court has recognized the undeniable fact that a strong emotion of the mind, and particularly when that emotion is highly unpleasant, as from a sense of insult, may produce a physical personal injury. Continental Casualty Co. v. Garrett, supra. This Court has also recognized the principle that, when definite and objective physical injury is produced as a result of emotional stress wrongfully caused by the defendant, a defendant under some circumstances may be held liable for such physical consequence notwithstanding the absence of any physical impact upon the plaintiff at the time of the mental shock. Saenger Theatres Corporation v. Herndon, supra. Since the case now before us has not been tried, and we do not know what facts will be developed when the case is tried, we have refrained from any discussion of the various allegations contained in the declaration.

(Hn 3) We think there is no merit in the appellee's contention that the declaration in this case failed to allege facts sufficient to show that Welch was the agent

of Zale Jewelry Company acting within the scope of his authority.

For the reasons stated above the judgment of the lower court is reversed and the cause remanded.

Reversed and remanded.

*Lee, P. J., and Ethridge, McElroy and Rodgers, JJ.,* concur.