Phillip J. BAST, Appellant,

v.

FORD MOTOR CREDIT CORPORATION, Appellee.

No. 79–2522.

United States Court of Appeals, Seventh Circuit.

Argued May 28, 1980.
Decided Sept. 24, 1980.

Donald S. Singer, Clayton, Mo., for appellant.

Steven P. Sanders, St. Louis, Mo., for appellee.

Before BAUER, Circuit Judge, KILKENNY, Senior Circuit Judge,* and CUDAHY, Circuit Judge.

KILKENNY, Circuit Judge.

Harriet M.[1] and Phillip J. Bast, her husband, brought this action for intentional infliction of emotional distress in Illinois state court. Appellee, Ford Motor Credit Corporation, removed the case to the district court on the ground of diversity, and subsequently moved for summary judgment. The district court granted appellee's motion. Phillip Bast (appellant) appeals. We affirm.

Appellant claims that he and his wife suffered emotional distress as a result of phone calls in which appellee's agents were attempting to locate appellant's son. He alleges that on several occasions these agents "berated and insulted" him and his wife after they denied knowing the whereabouts of their son. He also alleges that appellee's agents suggested that the Basts ought to pay the debt owed by their son. This harassment, it is alleged, culminated in a phone call to Mrs. Bast while she was in the hospital afflicted with a serious illness, and contributed to her death a few months later.

■ Our view of the entire record convinces us that under Illinois law, appellant cannot prevail. In *Public Finance Corp. v. Davis*, 4 Ill.Dec. 652, 360 N.E.2d 765, 66 Ill.2d 85 (1976), the leading Illinois case on the tort of intentional infliction of emotional distress, the Illinois Supreme Court adopted the position of the Restatement (Second) of Torts and described the conduct of which the defendant must be guilty before liability attaches:

"First, the conduct must be extreme and outrageous. The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or trivialities. 'It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency * * *.'" *Davis, supra* 4 Ill.Dec. at 654, 360 N.E.2d at 767.

The court also described the kind of injury the plaintiff must suffer before he can recover under this theory:

"Second, infliction of emotional distress alone is not sufficient to give rise to a cause of action. The emotional distress must be severe. Although fright, horror,

---

* The Honorable John F. Kilkenny, Senior United States Circuit Judge for the Ninth Circuit Court of Appeals, sitting by designation.

1. Harriet Bast died after this action began. No administrator or executor has been substituted for her. Consequently, only Phillip Bast is appearing before us.

grief, shame, humiliation, worry, etc. may fall within the ambit of the term 'emotional distress,' these mental conditions alone are not actionable. 'The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity.'" *Id.* 4 Ill.Dec. at 654, 360 N.E.2d at 767.

Reckless conduct supporting the tort is conduct the defendant knows or is substantially certain will result in severe emotional distress. *Id.* 4 Ill.Dec. at 654, 360 N.E.2d at 767.

In *Davis*, the court refused to find liability despite conduct by the creditor significantly more egregious than that in the instant case. There, the creditor: (1) called the debtor several times a week, frequently more than once a day; (2) visited the home one or more times a week; (3) called the plaintiff at a hospital while the plaintiff was visiting her daughter who was ill with a brain tumor; (4) called the plaintiff again at the hospital, despite admonitions not to do so; (5) induced the plaintiff to write a check with the promise that it would not be presented for payment, and then called an acquaintance of the plaintiff and informed her the plaintiff was writing bad checks, and; (6) visited the plaintiff's home, and after being told that the plaintiff could not pay, used the plaintiff's phone to call in an inventory of the plaintiff's household goods, failing or refusing to leave until the plaintiff's son arrived. Here, by comparison, appellee never sent agents to the Bast home, never called after 8:00 P.M., did not contact any employer, relative or friend of the Basts, and honored the request not to call again at the hospital. In his deposition, appellant admits that appellee's agents did not swear at him, nor did they threaten to sue him.

Appellant argues that *Davis*, is distinguishable from the instant case for the reason that, in *Davis* the creditor was harassing the debtor, not the parents or some other relatives of the debtor, as in the instant case. He contends the conduct is more extreme and outrageous because the Basts did not owe the debt.

We cannot agree with appellant's reading of *Davis*. It is true that the court there recognized that "the extreme and outrageous character of the conduct may arise from an abuse of a position or a relation with another which gives the actor actual or apparent authority over the other or power to affect his interests" and that the debtor–creditor relationship fits within that interpretation of the rule. *Id.* 4 Ill.Dec. at 654, 360 N.E.2d at 767. However, appellant admits that this relationship does not exist in the instant case. In fact, he argues that his son is completely emancipated and that he does not even know his son's whereabouts. Consequently, there are no special circumstances nor relationships existing between appellant and appellee making what is admittedly obnoxious conduct rise to a level sufficient to make out the tort.

While the conduct of appellee's agents might have been bothersome and their agents' conduct insulting, the alleged conduct in no way approaches the "extreme and outrageous" behavior required to make out the tort of intentional infliction of emotional distress under Illinois law. Moreover, the distress inflicted, as revealed by appellant's deposition and his answers to interrogatories, was not of a type that "no reasonable man could be expected to endure it." Even taking as true the allegations that appellee's agents were aware of Harriet Bast's illness, we must hold that the conduct alleged does not make out the tort. This is not to say that we approve of the action of appellee. In fact, if appellee's actions had been performed by a debt collection agency, they might well have violated the Illinois Collection Agency Act, Ill. Rev.Stat. 1977, ch. 111, par. 2001 *et seq.*, (*See Sherman v. Field Clinic*, 29 Ill.Dec. 597, 392 N.E.2d 154, 74 Ill.App.3d 21 (1979)), and if performed by a debt collector today, might violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* Nevertheless, appellant failed to make out a cause of action under Illinois law.

While there has been some suggestion that the conduct alleged might state a claim for the tort of unreasonable invasion of privacy, appellant did not argue that theory in his brief and explicitly stated at oral argument that neither the complaint nor the appeal was based on that theory. Consequently, we do not reach that question.

It appearing that there is no genuine issue as to any material fact and that appellee is entitled to a judgment as a matter of law, the judgment of the district court is Affirmed. F.R.Civ.P. 56(c).

CUDAHY, Circuit Judge, dissenting.

The majority seems to suggest that the gratuitous harassment of the debtor's father and dying mother are *less* actionable than like behavior addressed to the debtor himself (as in *Public Finance Corp. v. Davis,* 4 Ill.Dec. 652, 360 N.E.2d 765, 66 Ill.2d 85 (1970)). I agree with the widower Bast that precisely the reverse is true.

In *Davis* the allegations were contained in a *counterclaim* filed by defendant Davis after she was sued by Public Finance to collect a debt. The Court in *Davis* began its analysis by carefully establishing the context:

> Davis was legally obligated to Public Finance and was in default in making the payments. . . . A creditor must be given some latitude to pursue reasonable methods of collecting debts even though such methods may result in some inconvenience, embarrassment or annoyance to the *debtor.* The *debtor* is protected only from oppressive or outrageous conduct. . . . 4 Ill.Dec. at 655, 360 N.E.2d at 768 (emphasis supplied).

The Court concluded its analysis by again stressing the context: "Public Finance was attempting to collect a legal obligation from Davis in a permissible though persist-ent and annoying manner." 4 Ill.Dec. at 656, 360 N.E.2d at 769.

In the instant case, on the other hand, Mr. and Mrs. Bast admittedly never owed Ford Credit a cent. It offends common sense to suggest that creditors have more latitude to harass the debtor's parents than they do the debtor himself.[1] This decision is a dangerous precedent—a Magna Carta for bill collectors—inviting them to raise their sights, to spread their nets, in a quest for new targets of opportunity.

Among other things, the Basts allege here that Ford Credit, knowing Mrs. Bast to be ill, called her at the hospital where she was receiving chemotherapy. After this unfortunate intrusion Mrs. Bast required sedation. The call (in September) allegedly contributed to her death (in January). Employees of Ford Credit called the Basts (who admittedly owed nothing) "deadbeats," "liars," "cheats" and "fakers." In my view this is sufficiently "outrageous" to survive summary judgment.

"Bill collectors have long occupied a special niche in the law of torts recognizing recovery for intentional infliction of emotional disturbances." *Public Finance Corp. v. Davis,* 4 Ill.Dec. at 659, 360 N.E.2d at 772 (Dooley, J., dissenting).

We ought not in the instant case to deny them their accustomed niche.

I respectfully dissent.

---

1. *See George v. Jordan Marsh Co.,* 359 Mass. 244, 268 N.E.2d 915 (Sup.Jud.Ct.1971) (upholding claim for mental anguish and physical pain caused by abusive language and threats in attempted collection of bill owed by plaintiff's son); *Lyons v. Zale Jewelry Co.,* 246 Miss. 139, 150 So.2d 154 (Sup.Ct.1963) (same); *Bennett v. City National Bank and Trust Co.,* 549 P.2d 393 (Okl.Ct.App.1975) (same); *Moore v. Savage,* 359 S.W.2d 95 (Tex.Civ.App.1962, writ ref'd n.r.e.) (per curiam) (sustaining jury verdict allowing recovery for physical and mental distress caused by attempt to collect bill owed by plaintiff's employee). *See also* Annot., 46 A.L. R.3d 772 (1972).