### Hood *v.* Moffett.

[69 South. 664.]

1. PHYSICIANS AND SURGEONS. *Contracts. Excuse. Actions for breach of contract. Physical pain. Mental anguish. Appeal and Error. Review. Harmless error.*

   Where a physician agreed without qualification to attend plaintiff at her approaching confinement for a stipulated sum, it was no excuse that at the time treatment became necessary that he was engaged with another patient and could not leave, as the rule is "as a man consents to bind himself so shall he be bound."

2. PHYSICIANS AND SURGEONS. *Actions for breach of contract. Mental anguish.*

   When physical pain is an element of damage mental anguish accompanying it, is also an element thereof and can be recovered for.

3. APPEAL AND ERROR. *Review. Harmless error.*

   Where in a suit against a physician for breaching his contract to attend plaintiff, a charge was given that it was the duty of the physician to either have sent another doctor, or notified plaintiff that he could not attend her, such an instruction was harmless as being more favorable to the physician than the law warranted.

4. APPEAL AND ERROR. *Review. Harmless error.*

   In a suit against a physician for breach of his contract to attend a woman during her confinement, while an instruction submitting the question of punitive damages to the jury should not have been given, it was harmless where the jury only awarded plaintiff one hundred fifty dollars damages.

APPEAL from the circuit court of Harrison county.

HON. T. H. BARRETT, Judge.

Suit by Mrs. Lena Moffett against Dr. B. S. Hood. From a judgment for plaintiff, defendant appeals.

This is a suit in which a judgment for damages was rendered in favor of appellee for an alleged breach of a contract on the part of appellant.

Several weeks prior to the 14th day of September, 1912, appellant entered into a contract with appellee's husband, for her benefit, to attend and render to her medical assistance at her approaching accouchement, for which he was to receive the sum of twenty dollars. This money according to appellant, was to be sent him by the messenger who should summon him to appellee's bedside, but according to Moffett nothing was said about the payment being made in advance. About ten o'clock on the night of Friday, the 14th day of September, appellee was attacked by what she supposed to be labor pains. Whereupon a messenger was sent to appellant, who lived in a village about six miles distant, to come at once, the sum of twelve dollars and fifty cents being sent by this messenger to be delivered to the doctor along with the message; that being all the money Moffett then had. This message was delivered to appellant at the home of another female patient, who was then also about to be delivered of a child. At what hour this message was actually delivered to appellant, if the same is of importance, does not appear, but the messenger left Moffett's residence about ten o'clock p. m. and returned before two o'clock a. m. Appellant could not leave the patient he was then attending, so that this messenger sought to obtain the services of two other physicians in the village, but, having failed to do so, returned to appellant and again requested that he attend appellee. Appellant agreed to attend Mrs. Moffett, and told him to tell her husband that he thought he could leave his then patient in about an hour and a half, and that if he

could not leave within that time "he would get up there between then and daylight," and also to tell Moffett that in event, he, appellant, should not be needed for Moffett, "to let him know at his expense and save him the trip up there." According to the testimony of appellant, the message he sent Moffett was as follows:

"I told him to tell Mr. Moffett I would be up there to-night, provided I got through with Mrs. Lott. If I didn't come that night to wire me the next morning at my expense, if his wife was still sick I would come in the morning, to save me the drive up there."

The patient appellant was then attending was not delivered of the child, and continued to require his immediate attention until about six o'clock p. m. of the next day. When Moffett's message was delivered to appellant the messenger also gave him the money sent by Moffett, which he, appellant, accepted and retained. Mrs. Moffett's child was not born until the night of the following Thursday, she having then obtained the services of another physician. There was some testimony of physicians that Mrs. Moffett must have been mistaken in thinking that she was suffering from labor pains when her husband sent for appellant; that her pains must have been "false" instead of real labor pains, but that if false the pain could have been relieved by a physician. On the contrary, Mrs. Moffett stated that she had given birth to a number of children, that she knew labor pains from past experience, and that had Dr. Hood attended her on the night or morning after he was sent for she would have been delivered of the child within two or three hours. She suffered pains stated by her to be labor pains at intervals from Friday night until Thursday night. Appellee's husband stated that he went to appellant's office Monday afternoon to see him about the matter, but that he was absent at a lumber camp some distance away. Appellant stated that had he been again requested to

attend Mrs. Moffett he would have done so, provided the remainder of the fee was paid; that he kept the twelve dollars and fifty cents, intending to apply it in event he should not be called upon to attend Mrs. Moffett to an indebtedness then due him by Moffett for services rendered to his family in the past.

*Mize & Mize,* for appellant.

This is a plain contract between N. J. Moffett and Dr. Hood by the terms of which Dr. Hood was to wait on his wife when she was confined, and that he might be expected to be called at any time after the 14th of August. That the case went on but he was not called until the 14th of September following, and at the time he was called he was attending a very similar case and the patient was in a very dangerous condition and he could not then leave her.

We do not think it is incumbent in a case of this kind for a doctor to leave a patient who is in a precarious condition to attend one that he had previously contracted to attend to, one that is needing his service while he is attending one in a precarious condition, and it is undisputed in this case that Mrs. Batson was in a precarious condition. Especially is it so when the contract is indefinite as to time, it being impossible for Dr. Hood to have told exactly when Mrs. Moffett would need him, and therefore being called when he had no notice of the time when Mrs. Moffett actually needed him, and being on another case it was his duty to stay with Mrs. Batson and not leave her if she was in a precarious condition, and even though Mrs. Moffett did demand his services under a previous contract while he was in attendance on Mrs. Batson.

The very nature of a physician's business is such that sometimes his services will be needed in two places at one time, as in this case. This was just an ordinary contract between Moffett and Hood, and we submit that the peremptory instruction should have been given.

Instruction No. 1 given for the plaintiff is fatally erroneous. This instruction will be found at the bottom of page 14, and is a very long one. The instruction tells the jury, after setting out the contract between Hood and Moffett, that under the circumstances Hood was bound to do one of two things, either to send another doctor to the plaintiff or to notify the plaintiff so that notification would reach her not later than the expectation of time he was to be there under his promise aforesaid.

It is not shown that he could have sent another physician at the time he was needed by Mrs. Moffett. Of course he had no power to make another doctor go; and secondly, it tells the jury that he was bound to notify the plaintiff so that notification would reach her not later than the expectation of time that he was to be there under his promise aforesaid.

The instruction assumes that Hood did make a promise that he would be there at daylight unless he was notified not to come. Hood's testimony was that he told the parties that if she did not get any better to notify him and he would come. This part of the instruction plainly assumes that Hood promised to be there by daylight unless he was notified not to come, and which is the reverse of what Dr. Hood stated.

The instruction is further erroneous, in that it authorizes the jury to find damages for mental suffering to the plaintiff. This is clearly erroneous because mental suffering is never allowed in cases of this kind nor in any case in this state in the absence of physical injury, Vol. 1, Bobbs & Merrill, Miss. Digest, page 824. There is no physical injury within the meaning of mental suffering allowable in this case; and secondly, it authorizes the jury to find punitive damages for wilful and intentional breach of the contract. This is erroneous because there is no evidence of any wilful and intentional breach of contract in this case; and

secondly, punitive damages is never allowable in cases of breach of contract unless the breach was malicious.

*U. B. Parker* and *Bowers & Bowers,* for appellee.

Appellant complains of the only instruction given for appellee, because it tells the jury that under the circumstances Dr. Hood was bound to do one of two things, either to send another doctor to the plaintiff or to notify the plaintiff so that the notification would reach her not later than the expectation of time he was to be there under his promise, that the instruction is erroneous, and says that it was not shown that he could have sent another physician at the time he was needed by Mrs. Moffett, having no power to make doctors go. Appellant does not succeed in justifying himself for failure to notify Mrs. Moffett so that the notification would reach her not later than the expectation of time he was to be. there under his promise. This he certainly could have done and we insist was certainly his duty.

Appellant insists that the instruction is further erroneous in that it instructs the jury to find damages for mental suffering to plaintiff, citing Mississippi Digest, page 824, and says there is no physical injury within the meaning of mental suffering allowable in this case. The citation given by appellant refers to *Dorrah* v. *Illinois Central Railroad Company,* 65 Miss. 14, 7 Am. St. Rep. 629, and *Telegraph Company* v. *Rodgers,* 68 Miss. 748, 13 L. R. A. 859. An examination of the first of these cases will disclose the fact that this was a suit by Dorrah against the Illinois Central Railroad Company in which the plaintiff was carried twenty miles distant from the station at which he had intended to stop and it cost him thirty-five cents to purchase a ticket to return to this station and that he lost one day's time worth two dollars. The court instructed the jury that the case was not a proper one for punitive damages and that the case must be limited

to actual damages sustained by him.  The second case
went up from Lauderdale county and was a suit by Rod-
gers against the Western Union Telegraph Company for
its failure to deliver a message announcing the death
of his brother until after the last train left Meridian on
which he might travel to attend the funeral.  We sub-
mit that these cases are very unlike the case at bar, and
that the case at bar is one in which the appellee suf-
fered bodily injury on which to base a recovery for
mental suffering.  The Rodgers case above cited square-
ly differentiates itself from the case at bar and says on
page 862, 13 L. R. A. that damages for mental suf-
fering have been very generally allowed in three classes
of cases, viz:

    (1) Where, by the merely negligent act of the defend-
ant, physical injury has been sustained; and in this
class of cases they are compensatory, and the reason
given for their allowance by all the courts is that the
one cannot be separated from the other; (2) In ac-
tions for breach of contract of marriage; (3) In
cases of willful wrong, especially those effecting the
liberty, character, reputation, personal security, or do-
mestic relations of the injured party.''  We insist that
the case at bar falls squarely under the first above
mentioned class of cases, where by the merely negligent
act of the defendant, physical injury has been sustained,
and this class of cases are compensatory, and the reas-
on given for their allowance by all the courts is that the
one cannot be separated from the other.  Now, if the
appellee sustained bodily injury, the instruction was
correct, and we adopt the definition in the case of
*Craig* v. *Chambers,* 17 Ohio St., 254, as given on page
261 of the same opinion.

    Having suggested that the case comes within one of
the classes of cases mentioned in the Rodgers case, we
suggest that this court has on at least one or two oc-
casions in telegraph cases allowed the plaintiff to
recover for mental suffering.  *Magourink* v. *Western*

*Union Telegraph Company,* 31 So. 206. This is a case where the agent of the Telegraph Company willfully sent a forged and fictitious telegram to an unmarried man purporting to have been signed by an unmarried woman and afterwards exhibited the telegram and boasted of having sent it. In this case Chief Justice Whitfield says, citing the *Rodgers case,* 68 Miss.: "The Rodgers case simply held that in an action for mere negligence no recovery can be had from a telegraph company where only mental anguish, disconnected from any physical suffering, was involved. With that doctrine we have nothing to do in this case, and we say nothing about it now. That case itself gives three classes of cases wherein damages for mental suffering may be recovered. See pages 756, 757, 68 Miss. 825, 9 So. 862, 13 L. R. A., and 24 Am. St. Rep. 305."

The evidence in this case shows that the plaintiff suffered a great deal of pain, and that her illness was prolonged, in fact her suffering increased, and that the negligence of defendant in failing to attend her at the time when it is clearly shown that he promised to do so made her condition worse than it would have been if due care and regard for her had been used, and this notwithstanding the fact that he might have waited until he had completed his engagement with Mrs. Hood Lott. He certainly could have come to the bedside of the appellee Saturday night or Sunday morning.

Appellant complains that the instruction authorized the jury to allow plaintiff a further sum as punitive damages, and says this is erroneous because there is no evidence of any willful or intentional breach of the contract and that punitive damages are never allowable in cases of breach of contract unless the breach was malicious. 30 Cyc, page 1591, paragraph C. says: "Exemplary or Punitive. While it has been held that exemplary damages for malpractice can be recovered only where the evidence shows an evil motive in the

fact complained of, the weight of authority is to the effect that such damages may also be recovered where a physician has been guilty of gross negligence amounting to reckless indifference in treating a patient." In *Manderville* v. *Courtright et al.*, 73 C. C. A. 321, 6 L. R. A. (N S), 1003, it is held that exemplary damages are recoverable from defendants, who, in conducting the business of dentistry, caused plaintiff to be operated on by an employee unlicensed as a dentist, and through whose negligence and want of skill he suffered a severe injury of the jaw bone." The wilful and intentional act of a person is not to be determined by what he says about it himself, but by his action in the matter. So it is malice is inferred from the action of a person to be charged therewith, and we insist that the facts in this case which have been by the jury decided in favor of the appellee certainly warranted the court in instructing the jury as it did.

Last, but not least, taking into consideration all the evidence of this case which has been considered by the jury, and on which they have rendered a verdict for the very reasonable sum of one hundred and fifty dollars after having all the facts before them we think this is certainly a case in which if there is any doubt in the mind of the court as to the contention of the appellee in its argument here, Rule No. 11 of the supreme court of this state should govern; it provides that no judgment shall be reversed on the ground of misdirection to the jury, or the improper admission or exclusion of evidence, or for error as to the matter of pleading or procedure, unless it shall affirmatively appear from the whole record, that such judgment has resulted in a miscarriage of justice.

SMITH, C. J., delivered the opinion of the court.

(After stating the facts as above). The errors claimed by counsel for appellant to have been committed in the court below are, in substance, as follows:

(1)  Refusing to grant appellant a peremptory instruction.

(2)  Permitting the jury to award appellee damages for mental anguish.

(3)  Instructing the jury that when appellant found that he would be unable to comply with his promise to attend Mrs. Moffett, in event the jury believed from the evidence he in fact so promised—

"then under the law, he was bound to do one of two things: Either, first, send another doctor to plaintiff, or, second, notify plaintiff so that the notification would reach her not later than the expiration of the time at which he was to be there under his promise aforesaid."

(4)  Permitting the jury to award appellee punitive damages.

The ground upon which it is claimed a peremptory instruction should have been granted to appellant is that it is not incumbent upon "a doctor to leave a patient who is in a precarious condition to attend one that he had previously contracted to attend." This proposition, differently expressed, amounts simply to this: If a person assumes obligations to different parties, the performance of which may become incompatible with each other, both parties being entitled in equal right, is it an excuse for a default to one party that both obligations could not be performed, and that the person bound chose to perform his obligation to the other? In *Heirn* v. *McCaughan*, 32 Miss. 17, 66 Am. Dec. 588, this question was answered in the negative. Appellant's contract in this respect was without qualification, and the rule is that "as a man consents to bind himself so shall he be bound." 3 Elliott on Contracts, section 1891.

There is no merit in the second assignment of error as hereinbefore set out, for when physical pain is an element of damage, mental anguish accompanying it is also an element thereof, and according to the evidence of Mrs. Moffett, she suffered intense and prolonged

physical pain because of appellant's failure to attend her when requested so to do.

Conceding for the sake of the argument that the court below erred in instructing the jury that when appellant found that he could not attend appellee, it was his duty to have done one of two things, either send another doctor or notify appellee that he could not attend her, the error is not such as can be complained of by appellant, for it was committed in his favor, since neither the sending of another doctor, unless consented to by appellee or her husband, nor notifying appellee that he could not attend her, would have constituted a compliance with appellant's promise; such acts on the part of appellant could be availed of, if at all, in mitigation of damages only.

If appellant entered into a contract to attend appellee's accouchement and failed so to do without fault on the part of appellee or her husband, he is liable for the injury, if any, thereby inflicted upon her.

The jury should not have been instructed, however, to award punitive damages. This is a suit for damages alleged to have been sustained because of the breach of a contract, and the rule is, with probably two exceptions, and within neither of which does the case at bar come, that such damages are not recoverable in such an action unless the act or omission constituting the breach of the contract amounts also to the commission of a tort. 8 R. C. L. 604; 3 Elliott on Contracts, section 2124; 13 Cyc. 113; 12 A. & E. Enc. of Law (2d Ed.), 20. This error, however, was harmless, for the reason that since the amount of damages awarded is only one hundred and fifty dollars, it cannot be said that the jury responded to the instruction and included in the verdict an award for punitive damages.

*Affirmed.*

STEVENS, J. (dissenting). I am persuaded this cause should be reversed and remanded for a new trial in accordance with proper instructions. My brethren con-

cede error on the part of the trial court in authorizing the jury to allow punitive damages, but say this is harmless error. I think the verdict was influenced by, and in response to, this erroneous instruction. The circumstances detailed by plaintiff and her witnesses were calculated to arouse the indignation of jurors. The poverty of plaintiff, the ignoration of her rights by the defendant, according to the plaintiff's evidence, and the natural sympathy of all for a woman in impending travail are bound to have aroused a desire to punish the physician in this case.

Admitting the contract and the breach thereof, the actual damages are nominal. The contract as stated in the majority opinion was to render plaintiff "medical assistance at her approaching accouchement." When Dr. Hood was sent for, the full time for plaintiff's delivery had not come. This event was a week later, and in her labor, plaintiff had the attention of a competent physician. For what then are damages allowed in this case? The rule is elementary that to recover more than nominal damages for breach of contract there must be shown substantial loss or injury. Mrs. Moffett herself says she felt better after the runner for the doctor got back, and during that day, Saturday, objected to her husband sending for another physician, saying:

"Mr. Moffett asked me if I wanted another doctor, I told him I would let him know when I thought I needed another one."

And again:

"I would get one [doctor] as quick as I needed one. I knew I would need a doctor; I got better and knew that I would get worse again before I needed one again."

I think the main complaint in this case was about the money retained by Dr. Hood. This is, on analysis, a very bad case that might have been! Had plaintiff been delivered of her child before another physician was summoned, then a different case would have confronted the defendant as well as the court.