RODGERS, Justice:
This appeal came to this Court from the Circuit Court of Adams County, Mississippi. The appellee, Cities Service Oil Company, (hereafter called “Oil Company”) filed a suit against the appellant, James H. Swinny, for an account alleged to be due it for petroleum products sold to him for resale under a “Retail Distributor’s Commission Agreement.” The appellant admitted in his answer in the trial court that he was indebted to the Oil Company for the products sold to him, but he filed a counterclaim in which he contended that the Oil Company owed him a commission on certain products sold to Independent Oil & Coal Company, under the terms of the contract between him and the Oil Company. At the conclusion of the trial, the court sustained the motion of the Oil Company for a directed verdict in their favor, dismissing the counterclaim, and instructing the jury to find for them. The jury returned a verdict in favor of the Oil Company for the sum of $1,384.62. A judgment was entered against the appellant for that sum. The court overruled appellant’s motion for a new trial and he has appealed.
The dispute between the appellant and the Oil Company came about under the-following circumstances.
The appellant and Oil Company entered into a contract in which the Oil Company agreed that the appellant would sell and distribute its products “solely at wholesale, in the City/Town of Natchez, State of Mississippi, and such tributary points as may be designated by the CORPORATION (Oil Company) from time to time.”' The contract between the parties was entered into in 1954, and for more than ten years the appellant sold the products of the Oil Company, and apparently the dealings between the parties were mutually satisfactory. The contract required that the appellant “Distributor * * * devote sufficient time and energy to the sale and distribution of the Corporation’s line of products, as will (would) effectively promote the best interests of the Corporation in maintaining and promoting the amount of its sales of such products in the territory described.” It was agreed that the “contract shall continue for no definite term;” and that “either party may terminate this agreement at any time, with or without cause, by giving to the other party notice * * The contract also contained a provision whereby it was agreed that “In the event of the sale of products in tank car lots to customers in the territory covered by this agreement, the Corporation shall pay to the Distributor such commission as shall be agreed upon.”
The testimony in the record shows that the words “tank car lots” is a common term in the oil industry, meaning ship *797 ments in large quantities, and include large tank truck transportation as well as railroad tank cars. The testimony further shows that there was a published rate for most of the products sold to the distributors, by the Oil Company, hut there was no published rate for tank car sales. The appellant introduced many commission statement balance reports showing a printed form by which he was allowed credit for “commission on tank car sales.” He testified that these sales were not made through his bulk wholesale gasoline tanks in Natchez, but were made directly by large tank trucks from the Oil Company’s “tanks to the customer.” The appellant testified that the Oil Company agreed to pay him one-eighth of one cent per gallon for tank car sales to customers in Natchez, and that the amount shown on each balance sheet amounted to one-eighth of one cent per gallon for tank car lots of gasoline thus sold.
The testimony shows that at the suggestion of Mr. Halford, Managing Agent of the Oil Company, that for several years prior to July 1963, the appellant had attempted to negotiate with the Independent Oil & Coal Company, an independent company which purchased great quantities of gasoline for resale. This independent company was then obtaining its products from another major oil company, but appellant knew that the owners were not satisfied with the product it was buying from its source because it was not of sufficient octane quality to meet the demands of its customers. Finally, the owners of the independent oil company gave appellant a copy of an invoice showing the price it was then paying for gasoline. He immediately sent this invoice to the Oil Company. A short time thereafter, Mr. Ben Brian, Division Manager for the Oil Company, in company with Mr. Ryan, another Agent of the Oil Company, went to Natchez and contacted one of the owners of the Independent Oil & Coal Company. As a result of this meeting, they agreed to purchase all of its petroleum products from the “Arkansas Fuel Oil Corporation”; the “Oil Company” with which appellant had a contract for commissions on sales of tank car lots to customers. During the negotiations, the Agent for the Oil Company had requested one of the owners of Independent Oil & Coal Company not to mention to the appellant that he had contracted to purchase the products of the Oil Company.
The appellant learned of the negotiation and wrote to the Oil Company, expressing his sentiments, and advising the Oil Company that he expected to receive his commissions on the oil sold to the Independent Oil & Coal Company. In reply to appellant’s communication, the Oil Company wrote him that “Any assistance rendered by you in securing this account is appreciated, but, regretfully, does not entitle you to any commission. It is not our policy to pay consignees any commission on our unbranded sales to private brand resellers.”
The appellant contends that his contract entitles him to one-eighth of one cent per gallon for gasoline sold by the Oil Company in Natchez. On the other hand, the Oil Company contends that the appellant is bound by the contract and that the contract is “plain and unambiguous.” The appellee also contends that in order for an agent to have an exclusive right to sell products in a specific territory, it must appear in the contract by unequivocal terms or necessary implication. We agree with these contentions, and we are of the opinion that the contract is clear, and that it does appear in the contract that appellant is entitled to commissions on tank car lots sold to customers in-Natchez.
We are of the opinion that the .contract clearly states that the appellant, who was the named retail distributor, “solely at wholesale, in the City/Town of Natchez” was entitled to a commission as set out in the contract, namely: “as shall be agreed *798 upon”, in the event of sale of products in “tank car lots to customers.”
The Oil Company, however, contends that the Independent Oil & Coal Company was not appellant’s customer; that he did not sell the products to it, but that the contract-purchaser was a customer of appellee, Oil Company. Moreover, it is argued that the sale of oil products to the Independent Oil & Coal Company was not made in Natchez, that the testimony shows that the independent oil company purchases gasoline at Vicksburg, Mississippi, and conveys it to Natchez in its own trucks. We cannot agree with this contention because the contract is clear that appellant was entitled to a commission upon products sold in tank ■car lots “to customers in the territory cov■ered by this agreement”, and it would not make any difference where the customer received tank car lots of gasoline.
We do not believe that the contract between appellant and appellee Oil Company is restricted to its “brand name products.” The contract not only included '“its line of gasoline”, but “other petroleum products.” The contract provides that ap-pellee constituted appellant “(T)he distributor as distributor of its line of gasoline, oil and other petroleum products, and tires, tubes, batteries and acessories * * *.” (Emphasis supplied.) We are therefore of the opinion that the Oil Company cannot escape the terms of its contract upon the theory that it had a right to sell tank car lots of gasoline without paying the commission to its distributor for the reason it did not sell the gasoline under its trade name.
Finally, appellee contends that the “alleged oral agreement” is unenforceable as to the commission because the contract contains a paragraph in which it is said: “This agreement constitutes the entire agreement between the parties, and may not be changed except by written agreement signed by an .executive officer of the Corporation.”
We do not agree with the argument that this suit is an effort to change the contract or amend it. The effort made by the appellant was to enforce the contract. The amount of the commissions to be paid from time to time was by agreement to be determined by the parties. There was no agreement in the contract requiring that the amount of commissions should be in writing. It expressed an agreement to pay commissions, the amount of which would be agreed upon later. From time to time, the appellant was paid one-eighth of one cent, and it was mutually understood that this was the amount of the commission. This agreement as to the amount of the commission does not vary the terms of the contract, and it is enforceable since the contract does not come within the terms of the Statute of Frauds, Mississippi Code Annotated section 264 (1956). See Boggan v. Scruggs, 200 Miss. 747, 29 So.2d 86 (1947); Jackson v. Illinois Cent. R. Co., 76 Miss. 607, 24 So. 874 (1899).
We do not find from the record now before us any of the elements required to establish a claim for punitive damages. There was no wanton, reckless, malicious or oppressive character in the acts of the Oil Company on which to base a judgment for “added damages”, or punitive damages. We are of the opinion that punitive damages are not allowable under the facts shown in this record. Dorsey Miss. Sales v. Newell, 251 Miss. 77, 168 So.2d 645 (1964); Fowler Butane Gas Co. v. Varner, 244 Miss. 130, 141 So.2d 226 (1962); Hood v. Moffett, 109 Miss. 757, 69 So. 664, L.R.A. 1916B, 622 (1915); 22 Am.Jur.2d Damages § 245 (1965); 15 Am.Jur. Damages § 273 (1938); Annot. 84 A.L.R. 1350 (1933).
We are of the opinion that the appellant is entitled to recover from the defendant, Cities Service Oil Company, one-eighth of one cent on all tank car lots of gasoline sold to the Independent Oil & Coal Company while the contract between the appellant and appellee remained in force. The appellee Oil Company is entitled to be credited for the sum admitted to be due to it by the ap *799 pellant for products purchased. We hold that no punitive damages are allowable.
We reverse the judgment of the trial court and remand the case so that the amount due appellant, James H. Swinny, from appellee, Cities Service Oil Company, for commissions on tank car lots of gasoline sold to Independent Oil & Coal Company during the life of the contract here sued upon may be determined.
Reversed and remanded for trial in accordance with the foregoing opinion.
Reversed and remanded.
GILLESPIE, P. J., and JONES, BRADY and INZER, JJ., concur.