Robbie ANDREWS and J. D. Andrews, Plaintiffs,

v.

GAB BUSINESS SERVICES, INC., Defendants.

No. WC 76–98–S.

United States District Court, N. D. Mississippi, W. D.

June 20, 1977.

Terry Morris, McCormick & Morris, Oxford, Miss., for plaintiffs.

John L. Low, IV, Watkins & Eager, Jackson, Miss., for defendants.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

The defendant has filed herein motion for summary judgment which has been submitted for decision on the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits and memoranda of the parties.

The following facts are shown to exist by the documents to which reference has been made.

The nine-year-old son of plaintiffs, John Scott Andrews (decedent) was critically injured as a pedestrian attempting to cross State Highway 6 approximately two miles west of the City of Oxford, Mississippi, in Lafayette County on or about September 27, 1975. The young man was struck as he attempted to cross the highway by a motor vehicle driven by one Floyd Barger, who, at the time, was acting as agent of and in the course of his employment by the Illinois Central Gulf Railroad Company (ICG). The child was carried to the Baptist Memorial Hospital, Memphis, Tennessee, where he expired as the result of the injuries on October 5, 1975.

The decedent was survived by his parents, plaintiffs herein, and a brother Robert J. Andrews, who is a minor. The parents and the brother are the statutory beneficiaries of the wrongful death action created under the circumstances aforesaid by Miss. Code Ann. § 11-7-13 (1972).

An administration of the Estate of the said decedent was sued out in the Chancery Court of Lafayette County, Mississippi, and Robbie A. Andrews, the mother, was appointed Administratrix of the Estate. Mrs. Andrews was also appointed by the Lafayette County Chancery Court as the guardian of the Estate of her minor son, Robert J. Andrews.

The Andrews employed the Law Firm of McCormick & Morris, Oxford, Mississippi, on the date after the death of the child, to represent them in their claim for damages proximately resulting from the death of the son and brother.

On Wednesday, October 1, 1975, an agent of defendant General Adjustment Bureau, Inc.,[1] contacted Mr. and Mrs. Andrews at the hospital seeking an interview with reference to the injuries suffered by their son in the accident. The Andrews were reluctant to talk with the agent because of the emotional and mental strain to which they were subjected as the result of their son's condition. However, they did talk with the agent. As a result of the interview, they executed a written instrument entitled "Authorization for Medical Reports & Records" which authorized any party possessing information concerning the physical condition of their son to furnish such information to GAB. The authorization is dated October 2, 1975. There is some controversy as to whether the authorization was signed on October 1 or October 2. However, this conflict is not material to the determination of the issue presently before the court.

The Andrews contend that the agent of GAB represented to them at the time of the execution of the document that upon its execution GAB would acquire and pay all hospital and doctor bills and this would relieve the Andrews of the experience of receiving and handling the bills. The Andrews contend further that the agent represented that the payment of the bills was an absolute certainty without regard of what the Andrews and their attorneys might do later in any cause of action against ICG. The records reflect the bills were not paid by GAB but they were included in a settlement of the Andrews claim against ICG, which was made after the filing of suit against ICG for recovery of damages resulting from the death of the Andrews' son. A settlement of the Andrews claim and of the suit filed by them was perfected September 6, 1976. The settlement included medical and funeral expenses amounting to $5,643.42.

Mr. and Mrs. Andrews filed the action sub judice after completing the settlement mentioned above. They sue GAB for damages said to have been suffered by them as a result of an invasion of their privacy by the agent of GAB on October 1, 1975. They also sue GAB for an alleged intentional and malicious breach of the agreement to promptly acquire and pay medical bills relative to their son's injuries.

Mr. and Mrs. Andrews allege that the authorization signed by them was obtained by false representations and that the authorization is broader than represented by the agent of GAB. They also contend that the breach of the contract was without justification and for the purpose of inflicting severe emotional stress upon them during the course of negotiations concerning the death of their son and that the breach was attenuated with intentional wrong, insult and abuse.

Mr. and Mrs. Andrews allege that the action above mentioned by the agent of GAB inflicted injuries upon each of them and constituted a separate invasion of the privacy of each and subjected each to severe and emotional stress, anxiety, pain and suffering, embarrassment, insult and revulsion.

Mrs. Andrews sues for $25,000 compensatory damages and punitive damages amount to $105,000.00. The later amount includes a demand for a $5,000 attorney fee. Mr. Andrews seeks to recover compensatory damages amounting to $75,000.00, attorneys' fees in the sum of $5,000 and punitive damages in the sum of $500,000.

GAB has moved for summary judgment on three grounds:

---

1. The complaint described defendant as "General Adjustment Bureau, Inc." The answer states that the correct corporate name of defendant is GAB Business Services, Inc. No point is made as to the misnomer and the clerk will be directed to make the correction in the style of the case on the court's docket. Reference to defendant in this memorandum will be made as "GAB".

1. That the claims are barred by the Mississippi 1-year statute of limitations, Miss.Code Ann. § 15–1–35 (1972);

2. That the claims, if any, have been compromised, settled and released by virtue of a general release executed by plaintiffs on September 6, 1976; and

3. That the complaint does not state a cause of action on behalf of either of the plaintiffs.

A summary judgment should be entered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits submitted, show that there is no genuine issue as to a material fact and that defendant is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c).

■ There is some controversy as to the manner in which the agent of GAB approached and secured an interview with Mr. and Mrs. Andrews. It is not disputed, however, that they voluntarily talked with the agent. Having consented to the interview, they cannot complain of an intrusion upon their privacy. *See*, W. Prosser, *The Law of Torts*, § 117 at p. 817 (4th Ed. 1971), where the following appears:

Chief among these [defenses] is the plaintiff's consent to the invasion, which will bar his recovery as in the case of any other tort. It may be given expressly or by conduct, such as posing for a picture with knowledge of the purposes for which it is to be used, or industriously seeking publicity of the same kind.

(footnotes omitted)

Nor does the contention that the authorization was obtained by deceit, fraud or misrepresentation impair the validity of the consent.

The court has concluded that the intrusion, if any, upon plaintiffs is not actionable under the undisputed facts as reflected by the record.

■ Assuming arguendo that GAB's agent illegally intruded upon the privacy of plaintiffs as the result of which plaintiffs had a cause of action against GAB for the recovery of damages, the court is of the opinion that the intrusion constituted an intentional tort which is barred by Miss. Code Ann. § 15–1–35 (1972). The tort occurred, if at all, on October 1, 1975, and the suit was not filed until more than 1 year later, October 6, 1976. *Dennis v. Travelers Ins. Co.*, 234 So.2d 624 (Miss.1970).

■ The "invasion of privacy" cause of action cannot be maintained for yet another reason. After the death of their son, plaintiffs claimed the benefits of the authorization signed by them. In so doing, they waived any claim which they may have had for the alleged privacy invasion. Plaintiffs seek to recover damages for an alleged breach of the contract. Thus, they seek to enforce the fruits of the interview. Under such circumstances, they cannot be heard to say that they did not consent to the interview.

The court finds that the "intrusion of privacy" claim is not supported by the undisputed facts and defendant is entitled to a summary judgment on this issue.

It is undisputed in the record that plaintiffs' son was injured September 27, 1975; that he was confined to the intensive care unit of the hospital until his death on October 5, 1975; that an agent of defendant contacted plaintiffs on or about October 1, 1975, and secured an "Authorization For Medical Reports and Records"; that the medical bills incurred by plaintiffs for the treatment for the injuries received by their son were not paid until the settlement was effected; that on or about October 9, 1975, attorneys for plaintiffs requested and received a copy of the authorization from defendant and that negotiations for the settlement for the claims of the Andrews family for the death of decedent continued from the time of his death until the settlement was effected on September 6, 1976.

The complaint alleges that the agent who interviewed the Andrews assured their attorneys that payment would be made within 30 days after the demand was made for payment thereof but later advised their attorneys that payment would not be made as the Andrews family had retained attorneys

to represent them in their claims against ICG.

Defendants rely upon a release executed September 6, 1975, signed by plaintiffs in their personal and individual capacities and by Mrs. Andrews as the administratrix of the estate of decedent and as the guardian of the estate of her minor son. Mrs. Andrews had been therefore authorized to execute the release on behalf of the estates by decree of the Chancery Court of Lafayette County, Mississippi. The release binds plaintiffs in their individual and personal capacities and therefore settled their individual claims as well as the claims of the estates. The release is in words and figures as follows:

### RELEASE

For the sole consideration of Twenty-Five Thousand Dollars ($25,000.00), the receipt and sufficiency whereof is hereby acknowledged the undersigned hereby release and forever discharge Illinois Central Railroad Company, Illinois Central Industries, Inc. and Floyd Barger, their heirs, executors, administrators, agents and assigns, *and all other persons, firms or corporations liable or who might be claimed to be liable*, none of whom admit any liability to the undersigned but all expressly deny any liability, from any and all claims, demands, damages, actions, causes of action, or suits of any kind or nature whatsoever, arising or growing out of an automobile accident which occurred on Highway 6 in Lafayette County, Mississippi, approximately 2 miles west of Oxford, on September 27, 1975, in which John Scott Andrews, a minor, was struck by an automobile driven by Floyd Barger and received injuries from which he later died.

Undersigned hereby declares that the terms of this settlement have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise adjustment and settlement of any and all claims, disputed or otherwise, on account of the injuries and damages above-mentioned, and for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident.

This settlement is made pursuant to the authority of a decree entered in Cause No. A–6177 of the Chancery Court of Lafayette County, Mississippi, styled "In Re: Estate of John Scott Andrews, Deceased, Robbie A. Andrews, Administratrix."

WITNESS OUR SIGNATURES, this the 6th day of September, 1976.

/s/ John Andrews
John D. Andrews
/s/ Robbie A. Andrews
Robbie A. Andrews
/s/ Robbie A. Andrews
Robbie A. Andrews, Administratrix of the Estate of John Scott Andrews, Deceased
/s/ Robbie A. Andrews
Robbie A. Andrews, Guardian of Robert J. Andrews, A Minor

APPROVED:
McCORMICK AND MORRIS
/s/ Terry R. Morris
Attorneys for Plaintiffs
(Emphasis supplied)

Defendant claims that the release is of sufficient breadth to acquit and release it from the claim herein asserted. The decree of the Chancery Court authorizing the settlement provides in pertinent part as follows:

That after considerable negotiation, the said Floyd Barger and Illinois Central Gulf Railroad have agreed to pay to all of said claimants the total sum of $25,000.00 in full and complete compromise and settlement of said wrongful death claim, including medical and funeral expenses in the amount of $5,643.42, as well as the claims of Robert Jay Andrews and John D. Andrews for their alleged injuries and damages as bystander witnesses to said fatal collision.

.    .    .    .    .

That the said Robbie A. Andrews, individually, as administratrix of the estate

of John Scott Andrews, deceased, and as guardian of Robert Jay Andrews, a minor, be, and hereby is, authorized to join with John D. Andrews, individually and as father of said minor, in executing a full, complete and final release, fully, finally and forever releasing Floyd Barger and Illinois Central Gulf Railroad of any and all claims, demands, actions, rights of action and causes of action of every kind and nature arising in favor of any of said heir at law of John Scott Andrews, deceased, under the provisions of Section 11–7–13, Mississippi Code of 1972, Annotated, inclusive of medical and funeral claims of Robert Jay Andrews and John D. Andrews as bystander witnesses to said automobile collision, arising or growing out of said automobile collision.

Plaintiffs contend that the record does not support a finding that GAB acted in the transaction as an "agent" of ICG and the word "agent" included in the release, could not be construed to extend to it. The record does not contain facts upon which the court can determine whether defendant acted within the matter as an agent for ICG or as an independent adjuster. However, the release extends not only to "agents" of the named parties, but also to "all other persons, firms, or corporations liable, or who might be claimed to be liable . . . arising or growing out of an automobile accident which occurred on Highway 6, Lafayette County, Mississippi, approximately 2 miles West of Oxford on September 27, 1975, in which John Scott Andrews, a minor, was struck by an automobile driven by Floyd Barger and received injuries from which he later died."

It is clear to the court that a claim for the payment of medical bills is such a claim as will rise from the accident mentioned. The release also affirmatively states that it is executed "for the purpose of making a full and final compromise adjustment and settlement of any and all claims, disputed or otherwise, on account of the injuries and damages above-mentioned, and *for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident."* (Emphasis supplied).

The court has concluded that the release executed by the plaintiffs is broad enough to effect an acquittance of GAB from the claims asserted against it in the action sub judice.

The motion is well taken for the further reason that the complaint does not state a cause of action for the recovery of damages on the breach of contract theory advanced by plaintiffs.

Plaintiffs assert that the breach was intentional and justifies imposition of punitive damages. The medical bills having been expressly included within the settlement between the parties, the only damages which plaintiffs could conceivably assert herein would be punitive damages. The parties refer to this feature of the case as a suit for recovery of damages for the "intentional infliction of mental stress".

The only time an agent of GAB was in contact with the plaintiffs was the occasion of October 1, 1975, when plaintiffs were interviewed and the authorization was obtained. Thereafter, GAB was contacted by attorneys for plaintiffs with regard to payment of the medical bills while the negotiation for settlement was in progress and the request was denied.

Under these circumstances, the undisputed facts do not justify the imposition of the rule that a cause of action exists for the recovery of punitive damages for breach of contract attended by intentional wrong, insult, abuse, or gross negligence, which amounts to an independent tort, recognized by the Mississippi Supreme Court in such cases as *D. L. Fair Lumber Co. v. Weems,* 196 Miss. 201, 16 So.2d 770, 773 (1944); *Hood v. Moffett,* 109 Miss. 757, 69 So. 664 (1915); *American Railway Express Co. v. Bailey,* 142 Miss. 622, 107 So. 761 (1926); *Progressive Casualty Ins. Co. v. Keys,* 317 So.2d 396 (Miss.1975); *Saenger Theatres Corp. v. Herndon,* 180 Miss. 791, 178 So. 86 (1938); *Lyons v. Zale Jewelry Co.,* 246 Miss. 139, 150 So.2d 154 (1963); *T. G. Blackwell Chev. Co. v. Eshee,* 261 So.2d 481 (Miss.1972); *Arnold v. Spears,* 217 Miss. 209, 63 So.2d 850 (1953). The case of *First National Bank v. Langley,* 314 So.2d 324

(Miss.1975) is not controlling here. The facts in the action sub judice · are clearly distinguishable from those involved in *Langley.*

*American Railway Express Co. v. Bailey, supra,* supports the court's holding on the issue here considered. There the court said:

> The only other question for decision is whether or not, under the facts, the appellee was entitled to recover punitive damages. In the execution of the contract here involved, the appellant was engaged in a purely commercial business, and the contract between the parties was simply one to promptly transmit and pay money, and this suit is one for the breach of that contract. The general rule is that punitive damages are not recoverable for the breach of a contract, unless the breach is attended by some intentional wrong, insult, abuse, or gross negligence, which amounts to an intentional tort. [Citations omitted]. While the evidence in the case at bar shows negligence on the part of the forwarding company, it negatives any intentional or willful wrong, or gross negligence, which amounts to the commission of a tort.

107 So. at 763.

The motion for summary judgment is well taken and a judgment will be entered dismissing the complaint.